UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RICK REILEY, et al.,

    Appellants,

v.  No. 5:18-cv-00921-JKP

ALFARO ENERGY, LLC, et al.,

    Appellees.

## MEMORANDUM OPINION AND ORDER

Rick Reiley, Betty Reiley, Vincent Gillette, Thomas Gillette, Sharon Walls, Rick Griffey, DC Oil Company, James Buford Salmon, and David Davalos ("Appellants") appeal the order of the bankruptcy court, giving priority to claims not specifically enumerated in Texas Civil Practice and Remedies Code § 64.051 over claims specifically enumerated in that section. For the reasons stated below, the determination made by the bankruptcy court with respect to distribution of earnings held in the Receivership estate is REVERSED. The cause is REMANDED with instructions to distribute the earnings held in the Receivership estate in accordance with the priority scheme enumerated in section 64.051.

## I. BACKGROUND

In 2009, Brian Alfaro, through Alfaro Oil and Gas LLC, acquired interests in two Louisiana oil prospects, the East Moss Lake/LNG project operated by Jordan Oil Company and the North Cankton project operated by Mack Energy Company. *See* Ruling before the Honorable Craig A. Gargotta, United States Bankruptcy Judge at 18:5-12, July 2, 2018 (ECF No. 2-3) (hereinafter "R."). Even though the operating agreements for each prospect prohibited assignment or subdivision of a participating interest, Alfaro engaged in a nationwide sales effort

signing up participants who funded the expenses necessary to participate in the ventures. R. at 18:13-23. Alfaro's investors contributed $577,000 more than it cost Alfaro to participate in the North Cankton prospect and $1,010,179 more than it cost him to participate in East Moss Lake/LNG. R. at 20:1-18. Thereafter, "Alfaro signed a turnkey contract with his own company that obligated the joint venture to pay $1,179,256 for his services to 'acquire, drill and complete' the well." R. at 18:19-22. The wells hit. Jordan Oil and Mack Energy issued revenue checks to Alfaro and Alfaro distributed some share of the revenue to his investors. R. at 20:23–21:3. Jordan Oil filed a concursus proceeding in Louisiana in 2012, "alleging breach of the operating agreement by fractioning off the participation interest to outside investors." R. at 21:7–23:5. Jordan Oil requested that current and future proceeds from the well operations be deposited into the court's registry rather than to Alfaro. R. at 21:14–22:12. Alfaro continued to send revenue checks to the North Cankton and East Moss Lake/LNG investors by recruiting new investors to invest in new wells[1] and distributed the new investors' money to the North Cankton and East Moss Lake/LNG investors (hereinafter the "Cankton/Lake Investors"). R. at 22:13-21. Although "the precise source of any funds used by Alfaro to pay these investors is almost likely impossible to know." R. at 22:22-24.

On April 28, 2015, in the 288th District Court for Bexar County, the new investors filed suit and sought and obtained a temporary restraining order against Alfaro; Primera Energy, LLC; Alfaro Oil and Gas, LLC; and Alfaro Energy, LLC. Bankr. ECF No. 1, Part 4, Image 1-3 at 1-2;[2] ECF No. 4 at 6; *see also Patek v. Alfaro (In re Primera Energy, LLC)*, 579 B.R. 75, 88 (Bankr. W.D. Tex. 2017). On June 2, 2015, the state court appointed Lamont Jefferson to serve as

---

[1] Such as the "Montague Legacy" wells, the "Screaming Eagle" wells, and the "Black Hawk Buda." *Patek v. Alfaro (In re Primera Energy, LLC)*, 579 B.R. 75, 94-99 (Bankr. W.D. Tex. 2017).

[2] "State Court Case Information for Cause #: 2015CI06991. Frederick Patek et al vs Brian K Alfaro et al. Date filed: 04/28/2015." Bankr. ECF No. 1, Part 4, Image 1-3 at 1.

2

Receiver for Primera Energy, LLC; Alfaro Oil and Gas; and Alfaro Energy, LLC. R. at 15:4-13. On June 3, 2015, Primera Energy, LLC filed for relief under Title 11 of the United States Code commencing Bankruptcy Case No. 15-51396. ECF No. 4 at 6. On June 19, 2015, the state court action was removed to the bankruptcy court, commencing Adversary Proceeding No. 15-05047. *Id*. This resulted in the state court receivership remaining in place, "but the assets and business activities of Primera Energy, LLC were not included in the receivership." *Id.* at 6-7.

On November 5, 2015, the Louisiana concursus proceeding settled and the case was dismissed. R. at 23:12-23. On March 26, 2016, the bankruptcy court acknowledged the concursus proceeding settlement and authorized receipt by the Receiver of the funds associated with that settlement. Bankr. ECF No. 139. After expenses associated with the settlement, $613,819.23 was transferred out of the Louisiana court's registry and deposited in the Receivership account. R. at 23:16-20.

The new investors proceeded to trial, at which nine of the plaintiffs prevailed (the nine Appellants of this appeal) and were awarded damages in the amount of $7,989,526.75. *In re Primera Energy, LLC*, 579 B.R. at 187. On March 26, 2018, the Receiver filed his recommendations regarding the distribution of the funds held in the Receivership estate. ECF Nos. 4 at 7; 2-2 at 14-41. On April 11, 2018, Appellants filed their Notice of Claims. ECF Nos. 4 at 7; 2-2 at 42-44. On July 2, 2018, the bankruptcy court issued an oral ruling adopting in part and denying in part the Amended Receiver's Report and Recommendations and contemporaneously filed a written order distributing the liquid receivership first to fees and expenses of the Receiver; second, the sum of $242,803.05 to the "Named Plaintiffs" (all plaintiffs named in the *Patek v. Alfaro* litigation as opposed to only the nine prevailing plaintiffs) on a pro rata basis; third, the remaining amount in the liquid receivership to the Cankton/Lake

Investors; and fourth, to the extent that any funds remain, to the Prevailing Plaintiffs (Appellants). ECF No. 2-2 at 8-50. On August 17, 2018, the bankruptcy court denied the Prevailing Plaintiffs' motion for reconsideration. Bankr. ECF No. 457.

On September 4, 2018, Appellants filed this appeal. After the Appeal Record was transmitted on October 10, 2018, the appeal was docketed on October 30, 2018. Briefs were filed on November 29, 2018 (Appellants), December 31, 2018 (Appellee), and January 14, 2019 (Appellants' Reply) (ECF Nos. 4, 5, 6). On August 12, 2019, the Appeal was transferred to the undersigned. On January 24, 2020, the parties presented oral arguments.

## II. STANDARD OF REVIEW

Section 158 of Title 28 of the United States Code confers jurisdiction on the district courts to hear appeals from the final judgments, orders, and decrees of bankruptcy courts sitting within the same judicial district. "When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review generally applied by a federal court of appeals." *El Paso Apparel Group, Inc. v. Konigsberg Wolf & Co. (In re El Paso Apparel Group, Inc.)*, 288 B.R. 757, 759 (W.D. Tex. 2003). Thus, a district court reviews the bankruptcy court's factual findings for clear error, and legal conclusions and mixed questions of fact and law de novo. *Furlough v. Cage (In re Technicool Sys.)*, 896 F.3d 382, 385 (5th Cir. 2018) (citations omitted).

## III. DISCUSSION

### A. Argument raised for the first time on appeal

The parties' central dispute is the priority scheme enumerated in Texas Civil Practice and Remedies Code § 64.051. In its arguments to the bankruptcy court and brief to this Court, Appellee contended the plain language of section 64.051 means that enumerated claims must be

4

paid according to the section but the priority of any unenumerated claim is governed by rules of equity. ECF No. 5 at 8-10. At oral argument Appellee reversed course, stating that where receivership earnings are concerned, the six enumerated claims get paid first—a claim "not within" one of the enumerated six, "stands in the seventh position." Oral Arguments on Appeal before the Honorable Jason K. Pulliam at 28:10-11, Jan. 24, 2020 (hereinafter "Tr."). Appellee conceded Appellants' point that "[c]laims one through six get paid. And then if there is anything left over, [the seventh] gets paid if it's an earnings claim." Tr. 28:11-12. Appellee then argued—if the bankruptcy court found the $748,747.41 was earnings (and Appellee was not at all sure it had) then, the bankruptcy court erred. Tr. 34:22–36:7. Appellee further contended that whether the $748,747.41 was earnings was not fully briefed before the court below and intoned that the bankruptcy court made a statement rather than a finding with respect to the funds at issue. Appellee responded to this Court's questioning thusly:

> The Court: One last question for you, Mr. Jefferson. What am I to do with Judge Gargotta's finding, for lack of a better term? It appears to me he made a factual finding and a conclusion of law. I think he made a factual finding about the amount which he believes constitutes earnings, and I think he, applying the statute, determined or characterized $748,000 and some change, as earnings under this statute. . . . Sitting as an appellate court, am I not bound by those and I can't upset those?
>
> Mr. Jefferson: If -- if the findings are material to the bottom line judgment, then no. You've got to consider the findings. I mean, if he's got discretion by powers of equity, then -- and if he makes a statement as he is going through his analysis or even draws a conclusion that doesn't impact the legitimacy of what he ultimately does in his judgment, then you can disregard the statement, or you can make a ruling clarifying the statement or disowning or making it not effective. I would point out that Judge Gargotta, if he was entirely sure and if he had conducted an extensive analysis about what was earnings, he would not have said, on page 16: Finally, the Court notes that section 64.05 only applies to the earnings of property held in receivership. Therefore, the Court is not bound by the priority scheme of 64.051(a) with respect to funds that do not represent earnings. So he was -- it was -- he at least understood the principle of law that equity would determine anything that was not -- that was not earnings. But there was no -- there really was no -- the question of the characterization of funds is earnings or not -- was not a matter that

was fully briefed, fully argued in the bankruptcy court. It was a finding that he made as he recited what ultimately, in my opinion, was a very fair way to dispose of the property that he was in custody of.

Tr. 34:22–36:7.

The bankruptcy court's oral ruling shows Judge Gargotta's careful analysis in making the finding that $748,747.41 is earnings. Notably, Judge Gargotta said:

> During the hearing[3] the Prevailing Plaintiffs[4] classified $748,747.41 of the liquid funds as earning[s] subject to the distribution scheme identified in [s]ection 64.051(a). This amount represents the payment for the option contract entered into by the Receiver in production payments from Jordan Oil and Mack Energy. Neither the Receiver nor the Defendants disputed this classification. As such the Court finds that the $748,747.41 identified by the Prevailing Plaintiffs constitutes earnings. . . . Accordingly the Court finds that of the $1 million, 217,069.42 account balance of the receivership account $748,747.41 constitutes earnings of the property held in receivership and is, therefore, subject to application of the priority scheme mandated by [s]ection 64.051(a).

R. at 29:15-30:5; 32:11-16.

The only exception to the Fifth Circuit's prohibition against considering arguments raised for the first time on appeal is where an appellate court's "failure to consider a purely legal question" would result in "manifest injustice." *Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 690 (5th Cir. 2019) (citing *Judwin Props., Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 436 n.4 (5th Cir. 1992)). Consequently, "absent a showing of manifest injustice that would result from [ ] failure to consider the argument," this Court is not obliged to consider Appellee's argument that $748,747.41 does not constitute earnings. *Id.* Appellee has made no such showing. Accordingly, this Court will not disturb the bankruptcy court's factual finding regarding the amount ($748,747.41) or its legal conclusion that $748,747.41 constitutes earnings subject to distribution under section 64.051.

---

[3] On June 4, 2018, the bankruptcy held a hearing to consider, *inter alia*, Plaintiffs' (Appellants herein) Notice of Claims and the Amended Receiver's Report & 0ations. *See generally*, Bankr. ECF Nos. 396, 405, 432, 434.

[4] Appellants herein.

6

**B. Interpretation of section 64.051**

Appellants present a single assignment of error: "The bankruptcy court erred when it interpreted the priority scheme enumerated under Texas Civil Practice and Remedies Code § 64.051(a) with respect to giving priority to claims not specifically identified under section 64.051(a) over claims which are specifically identified under section 64.051(a)." ECF No. 4 at 11.

Section 64.051 reads:

> (a) A receiver shall apply the earnings of property held in receivership to the payment of the following claims in the order listed:
>
> (1) court costs of suit;
>
> (2) wages of employees due by the receiver;
>
> (3) debts owed for materials and supplies purchased by the receiver for the improvement of the property held as receiver;
>
> (4) debts due for improvements made during the receivership to the property held as receiver;
>
> (5) claims and accounts against the receiver on contracts made by the receiver, personal injury claims and claims for stock against the receiver accruing during the receivership, and judgments rendered against the receiver for personal injuries and for stock killed; and
>
> (6) judgments recovered in suits brought before the receiver was appointed.
>
> (b) Claims listed in this section have a preference lien on the earnings of the property held by the receiver.
>
> (c) The court shall ensure that the earnings are paid in the order of preference listed in this section.

Tex. Civ. Prac. & Rem. Code § 64.051.

Where a statute controls, the first and last stop is the statutory text. *Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 921 (5th Cir. 2019) ("our first stop (and usually our last) is the

statutory text"). "Text is the alpha and omega of the interpretive process." *Id.* (quoting *United States v. Maturino*, 887 F.3d 716, 723 (5th Cir. 2018)). Fifth Circuit precedent "demands 'unswerving fidelity to statutory language,' meaning we take lawmakers at their word and presume they meant what they said." *Id.* (quoting *Reed v. Taylor*, 923 F.3d 411, 415 (5th Cir. 2019)).

The language of section 64.051 is unambiguous. If, as Appellee suggests, section 64.051 is outmoded for twenty-first century businesses, that is an issue for the Texas legislature. Courts are obligated to "presume that a legislature says in a statute what it means and means in a statute what it says there." *Flores-Abarca v. Barr*, 937 F.3d 473, 486-87 (5th Cir. 2019) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992)). When the language of a statute is unambiguous, "judicial inquiry is complete, except 'in rare and exceptional circumstances.'" *Rubin v. U.S.*, 449 U.S. 424, 430 (1981) (citations omitted).

Notwithstanding the unambiguous language of section 64.051, the bankruptcy court, relying on *Waters-Pierce Oil Co. v. U.S. & Mexican Trust Co.*, 44 Tex. Civ. App. 397, 99 S.W. 212 (1906), concluded it had discretion to prioritize unenumerated claims over enumerated claims. R. at 26:21-25. A broader reading of the *Waters-Pierce* opinion finds that those appellants were all unenumerated claimants under then-controlling article 1472.[5] The *Waters-Pierce* trial court established the following structure under which unsecured creditors were assigned to Class E:

> Class A: expenditures of the Receiver made under direction of the Court (liabilities incurred by the receiver in operation);

---

[5] Article 1472 "fixes the manner of disbursing funds coming into the hands of the receiver and provides the order in which such earnings are to be paid out." *Waters-Pierce*, 99 S.W. at 215. Article 1472 sets out the same six categories and ranking of claims enumerated in § 64.051. *See* John Sayles and Henry Sayles, Sayles' Annotated Civil Statutes of the State of Texas (1898).

8

> Class B: statutory liens to laborers, mechanics, and operatives who performed labor or worked with tools, team, or otherwise in the construction or operation of the railroad, locomotives, or other equipment of the railroad (labor operatives' demands arising within twelve months prior to receivership);
>
> Class C: liens upon realty of the railroad; rolling stock and machinery bought by railroad company conditional sale; rental of general offices and cars; all statutory liens for material furnished for the construction or repair of the railroad, such as ties, rails, bolts, nuts, nails, spikes and lumber, piling and other like material; all equity liens, accruing under the provisional order . . . determined under the facts of each case as presented;
>
> Class D: mortgage holders;
>
> Class E: claims of unsecured creditors.

Order of November 9, 1908 at 1-2, Case 11076 (entering into the Minutes of the Court, the "Order and Judgment of the District Court of Harrison County, Texas, purporting to have been rendered on the 8 day of August, AD 1904 in this cause"). *See also* Brief of the Marshall National Bank and the Missouri Pacific Railroad Company at 1-2, Waters-Pierce Oil Co., et al., v. The United States and Mexican Trust Company, et al., No. 5013 (Tex. Sup. Ct. Feb. 11, 1907) (reciting the same and citing the "Record, pages 10-11"); Brief for the United States and Mexican Trust Company at 2-5, The Waters-Pierce Oil Co., et al., v. The United States and Mexican Trust Company, Trustee, No. 3849 (Ct. of Civ. App. Austin Oct. 24, 1906) (summarizing the trial court's provisional order of August 8, 1904, "outlining a scheme of classification of demands as they might thereafter appear").[6]

Some of the *Waters-Pierce* appellants "appealed from the decree placing their claims in the unsecured class, and others appealed from the decree subordinating their claims to those of others in the same class." *Waters-Pierce*, 99 S.W. at 213. None prevailed. The court found that the appellants complaining of their unsecured class (Class E) assignment—and being desirous of

---

[6] Order reproduced from Harrison County Court, Book S at 265-286. Brief reproduced from the holdings of the Texas State Archives.

a Class C assignment—all held claims for operating expenses of the railroad prior to the receivership and, absent inequitable diversion of earnings to the betterment of the bondholders or a statutory lien, were subordinate to the mortgage holders (Class D). *Id*. at 212-13. The court also found that the judgment-holding Class E appellants had brought their lawsuits after the appointment of the receiver and were therefore denied their attempt to clothe their claims in enumerated dressing. *Id*. at 215. After concluding that all of the appellants had been properly classified by the court below, the appellate court held that with respect to the Class E claimants:

> [the trial court] could not be controlled by the provisions of said article [1472] prescribing the order in which certain designated claims should be paid. Hence the court below, in passing upon the question of priority of payment as between these appellants and others placed *in the same class*, had the authority, under its general equity powers, to decide such question in accordance with what it deemed equitable and just under the circumstances.

*Id*. at 215 (emphasis added).

The *Waters-Piece* decision aligns with the unambiguous language of section 64.051, which this Court concludes prioritizes competing claims in this manner: (1) if there are competing claims for earnings and both claims are enumerated in the statute, then the court disburses the earnings in the order of preference identified in the statute; (2) if there are competing claims for earnings and one claim is enumerated in the statute and the other is not, then the court disburses the earnings in the order of preference identified in the statute, and any remaining amount may be disbursed using equitable principles; (3) if there are competing claims for earnings and neither claim is enumerated in the statute, then the court disburses the earnings using equitable principles.

## IV. CONCLUSION

For the reasons stated, the Court concludes Texas Civil Practice and Remedies Code § 64.051 is unambiguous. Because Appellee did not present and the Court did not find any

authority to deviate from section 64.051, the bankruptcy court erred by giving equitable preference in disbursement of earnings to a claim not enumerated in section 64.051 over a claim that is enumerated therein. Accordingly, the determination made by the bankruptcy court with respect to distribution of earnings held in the Receivership estate is REVERSED. The cause is REMANDED with instructions to distribute the earnings held in the Receivership estate in accordance with the priority scheme enumerated in section 64.051.

It is so ORDERED.

SIGNED this 26th day of February 2020.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE